No. 7:99-CR-89-1-F1
No. 7:03-CV-95-F

| | |
|---|---|
| JOE LOUIS CARDOSA, ) | |
| Petitioner, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| Respondent. ) | |

This matter is before the court for ruling on the Government's Motion to Dismiss [DE-84] Joe Louis Cardosa's motion to vacate, set aside or correct his conviction and sentence, pursuant to 28 U.S.C. § 2255 [DE-82]. Cardosa and co-defendant Sanchez were the subjects of a two-count indictment returned on December 2, 1999. Count One charged a conspiracy to distribute and possess with the intent to distribute more than five kilograms of cocaine hydrochloride, the penalty for which was not less than 10 years nor more than life imprisonment. Count Two charged a conspiracy to import more than five kilograms of cocaine hydrochloride from Mexico into the United States, which charge carried the same penalty as Count One. Under the original indictment, therefore, Cardosa faced two life sentences.

On March 20, 2000, Cardosa was arraigned and pled "not guilty" to both counts in the indictment. The very next day, before trial began, the Government filed a superseding indictment [DE-52] adding to the Count One conspiracy, "more than 100 kilograms of marijuana." The statutory penalty for that superseded count remained the same – not less than 10 years nor more than life imprisonment. The trial was continued upon the defendants' motion.

On April 3, 2000, when the case came on again for trial, the Government handed up the superseding indictment, which had been *manually amended* and initialed by the Government and defense counsel striking the words, "more than five (5) kilograms of." The amended superseding indictment, therefore, charged a conspiracy to distribute and to possess with the intent to distribute [an unspecified quantity of] cocaine hydrochloride . . . and more than 100 kilograms of marijuana." The effect of the amendment was to *reduce* Cardosa's statutory exposure under Count One to a minimum of 5 years and a maximum of 40 years.

The Government also proffered a Memorandum of Plea Agreement, signed by Cardosa, his lawyer and the Assistant United States Attorney, in which Cardosa agreed to plead guilty to Count One, described in the Plea Agreement as a "conspiracy to distribute and to possess with the intent to distribute cocaine and marijuana." Plea Agreement [DE-54] at ¶ 3. Cardosa and the Government stipulated that "the amount of cocaine that is readily provable . . . is one (1) kilogram, and the quantity of marijuana that is readily provable is 500 pounds."

The relationship of the various iterations of Count One to each other and to the plea agreement's stipulated quantities is more easily appreciated in table form:

| DOCUMENT | Cocaine | Marijuana | Maximum Penalty |
| --- | --- | --- | --- |
| Indictment | More than 5 kg | | 10 years to life |
| Superseding Indictment | More than 5 kg | More than 100 kg | 10 years to life |
| Amended Superseding Indictment | [unspecified quantity] | More than 100 kg | 5 years to 40 years |
| Plea Agreement Stipulation | 1 kg cocaine | 500 pounds [226.796 kg] | 5 years to 40 years |

2

After a good deal of discussion, the court accepted the manually amended superseding indictment because the proposed amendment *added nothing* to Cardosa's statutory exposure. In fact, it *reduced his statutory exposure by at least half.* The court advised Cardosa that he was subject to a sentence of not less than 5 nor more than 40 years imprisonment. Cardosa confirmed under oath that he understood the charges and the maximum punishment therefor, and that he wanted to plead guilty. The court conditionally accepted Cardosa's plea to Count One after carefully and thoroughly engaging him in its Rule 11 colloquy.

Based upon investigative materials provided to the United States Probation Officer containing documentation allegedly supporting the defendants' offense and relevant conduct, the Presentence Report concluded that Cardosa was accountable for at least 15 kilograms of cocaine and 1,000 pounds of marijuana. Had he been charged with that quantity, Cardosa would have been exposed to a minimum of 10 years and a maximum of life imprisonment. However, because of the United States Attorney's charging decision reflected in the amended superseding indictment, the defendants' punishment was statutorily capped at 40 years, with a 5 (rather than a 10) year mandatory minimum.

The Presentence Report calculated Cardosa's Guideline Range using the relevant conduct quantities of 15 kilograms of cocaine/1,000 pounds of marijuana, resulting in a base offense level of 34. With a three-point reduction for acceptance of responsibility, Cardosa's offense level was determined to be 31. Coupled with a criminal history category of II, Cardosa's Guideline Range as calculated by the Probation Officer was 121 - 151 months. Cardosa was subject to the statutory five-year mandatory minimum by virtue of the marijuana quantity alleged in the amended superseding indictment and stipulated by Cardosa.

The undersigned has a vivid recollection of this sentencing hearing. The transcript of that hearing accurately records the extensive discussion that transpired among the court, the Government, the Government's case agent, and defense counsel concerning the drug quantity

3

factual discrepancy in this case, its cause and its effects. Notwithstanding that the Government's case agent testified he was confident that a quantity of 4 kilograms of cocaine and 500 pounds of marijuana could be proved at trial beyond a reasonable doubt as against Cardosa,[1] the court reluctantly agreed to honor the parties' stipulation regarding lesser drug quantity. The court repeatedly reminded all parties that the court is not a party to plea agreements, is not bound by their terms, and should not be expected to honor stipulated drug quantities.

Using the stipulated drug quantities, the court found Cardosa's base offense level to be 26, and reduced it by three points for his acceptance of responsibility. The resulting Guideline Range was 51-63 months. The undersigned sentenced Cardosa to the top of that range – 63 months.

By letter dated August 10, 2000, and postmarked August 11, 2000, Cardosa complained to the undersigned about his attorney's performance, the Government's selective prosecution, and the court's failure to appreciate either of those violations of his rights because of its own disapproval of the deal struck between Cardosa and the Government. The court treated the letter as a notice of appeal.

Although the Fourth Circuit Court of Appeals determined that "Cardosa knowingly and voluntarily waived his right to appeal" and declined to consider his claims of ineffective assistance of counsel, that court declared Cardosa's remaining claims "without merit." Cardosa's petition for writ of *certiorari* was denied by the Supreme Court on May 20, 2002, from which date Cardosa had one year within which to file a motion for relief pursuant to §

---

[1]     These quantities would have produced a Guideline Range of 78-97 months. The agent testified that after he had executed the affidavit setting forth the facts supporting the defendants' arrest, he had come to believe that the confidential informants were not as reliable as he once had thought. Reference hereby explicitly is made to the transcript of Cardosa's sentencing hearing for a full account of the agent's testimony.

4

2255. Cardosa's § 2255 motion was file-stamped on May 23, 2003, but his signature on the document was sworn to have been *executed* on May 19, 2003 – one day prior to the filing deadline. As explained in *Houston v. Lack,* 487 U.S. 266 (1988), a *pro se* prisoner's document is deemed filed at the moment the document is delivered to prison authorities for mailing. Because the record does not reflect when Cardosa delivered this § 2255 motion to prison officials for mailing, the motion arguably is untimely. Nevertheless, in the interest of justice, the court has examined Cardosa's seven § 2255 claims.

## Ineffective Assistance of Counsel

> The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense," U.S. Const. amend. VI, and that such assistance be effective, *see Strickland v. Washington,* 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim . . . [a petitioner must] establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," *id.* at 688, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

*Orbe v. True,* 82 Fed. Appx. 802, 807 (4th Cir. 2003), *cert. denied,* 541 U.S. 970 (2004).

The simple standard for assessing an attorney's competence is whether his "assistance was reasonable considering all the circumstances." *Strickland,* 466 U.S. at 688. The judgments of counsel based on a "thorough investigation of the law and the facts," are "virtually unchallengeable," *id.* at 690. This determination of reasonableness requires a "context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Id.* at 688; *accord Roe v. Flores-Ortega,* 528 U.S. 470, 476-77 (2000).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney

5

performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland,* 466 U.S. at 689 (citations and internal quotation marks omitted).

An inmate seeking relief on grounds of ineffective assistance must identify the acts or omissions of counsel that he claims did not result from reasonable professional judgment. The court's task is to determine whether, in light of all the circumstances, those identified acts or omissions were outside the wide range of professionally competent assistance. "In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Orbe,* 82 Fed. Appx. at 812-13.

A defendant's right to effective assistance of counsel is constitutionally protected, not for its own sake, but because of the impact it has on his ability to receive a fair trial, *United States v. Cronic,* 466 U.S. 648, 658 (1984), or a fair appeal, *see Penson v. Ohio,* 488 U.S. 75, 88-89 (1988). Absent some impact of counsel's supposedly deficient conduct on the reliability of the trial, the Sixth Amendment guarantee generally not implicated. *See Cronic,* 466 U.S. at 658. Rather, the defendant must demonstrate that his attorney's alleged errors "actually had an adverse effect on the defense." *Strickland,* 466 U.S. at 693. *See also Smith v. Robbins,* 528 U.S. 259, 286 (2000) (applying actual prejudice requirement where counsel followed all required procedures and was alleged to have missed a particular nonfrivolous argument); *Strickland,*

6

466 U.S. at 699-700 (rejecting claim, partly because the evidence counsel did not introduce at trial probably would not have altered defendant's sentence).

First, Cardosa contends that his retained trial counsel rendered ineffective assistance by failing to file a motion seeking to enforce the terms of Cardosa's 1996 Memorandum of Plea Agreement in the Middle District of Florida.[2] Cardosa contends that the Florida plea agreement precluded use of any "protected information" he supplied to Florida federal authorities during debriefings pursuant to his agreement to cooperate. He contends the instant prosecution arose directly from that protected information.

The undersigned perceives this claim to allege that Cardosa's lawyer should have filed a motion to dismiss Count One of the indictment insofar as it was predicated on facts he disclosed during debriefings by the Government pursuant to his guilty plea in the Florida case. He contends that the promise made by the United States Attorney for the Middle District of Florida not to prosecute him for information revealed after entry of his plea was binding on all other federal prosecutors. Accordingly, he believes that the Government's use in the instant prosecution of disclosures he made during 1996 debriefings in Florida constituted a breach of the Florida plea agreement.

---

[2]   According to court records, Cardosa was charged federally in early 1996 in the Middle District of Florida for involvement in the distribution of 656.8 kilograms of marijuana. He pled guilty to conspiracy to possess with the intent to distribute marijuana and was sentenced on October 30, 1996, to a term of 24 months imprisonment followed by a three-year term of supervised release, which began on February 19, 1998. Nine months later, Cardosa was reported to have violated the terms of his supervised release and was ordered to perform community service. His involvement in the instant offense allegedly constituted yet another violation of the Florida supervised release.

Additionally, Cardosa pled guilty in the Southern District of Texas in February 2008, and was sentenced to sixty months imprisonment for conspiracy to possess with the intent to distribute a quantity more than 500 grams but less than 2 kilograms of cocaine. That conviction is the basis for a pending motion to revoke his supervised release in the instant case, filed on March 26, 2008.

Cardosa has not produced a copy of the Florida plea agreement, so its terms are not a part of the record herein.[3] As the court of appeals observed, however, remedy for an alleged breach of a Florida plea agreement is not available in the Eastern District of North Carolina.

Moreover, the record herein reveals that the "100 kilograms of marijuana" charged in the superseding indictment and stipulated to by Cardosa is not marijuana that was included in the Florida conspiracy conviction for conduct ending in 1996. Cardosa therefore cannot prove that he suffered any prejudice as a result of his lawyer's not having filed a motion seeking "enforcement "of the Florida plea agreement.

Second, Cardosa contends his lawyer was ineffective for failing to raise a "double jeopardy/multiple punishment issue." He bases his claim on his belief that he was prosecuted and convicted for conduct that was encompassed within the conspiracy to which he pled guilty in 1996 in the Middle District of Florida. In support of that claim, he offers numerous DEA-6 reports of his debriefings which supposedly "show conclusively that the overall reach of the 1996 conspiracy included the distribution of marijuana in the Eastern District of North Carolina." Cardosa's § 2255 Memorandum [DE- 82] at 6. Cardosa assumes the marijuana added to Count

---

[3] Cardosa's Plea Agreement with the Government in the instant case includes the following:

4. The Government agrees:

d. That the USA-EDNC will not further prosecute the Defendant for conduct constituting the basis for the Indictment; however, this obligation is limited solely to the USA-EDNC and does not bind any other state or federal prosecuting entities. . . . .

e. That the USA-EDNC agrees not to share any information provided by the Defendant pursuant to this Agreement with other state or federal prosecuting entities except upon their agreement to be bound by the terms of this Agreement.

Memorandum of Plea Agreement [DE-54] at 13.

8

One in the superseding indictment included marijuana that was a part of the 1996 Florida conspiracy conviction. Because he believes he twice was punished for the same 100 pounds of marijuana, he contends his conviction in this court should be vacated, or his sentence reduced by the 24 months he served on the 1996 Florida conviction. This claim is meritless, for the reasons set forth above.

Third, Cardosa claims his trial counsel was ineffective because he failed to file a motion to suppress the police reports (including DEA-6's) related to the 1996 Florida prosecution. He contends the reports were not admissible against him, even on rebuttal, pursuant to Rule 404(b), FED. R. EVID. This contention is meritless. Cardosa pled guilty. The Government never had any need to introduce such evidence against him.

## Prosecutorial Misconduct

Cardosa also contends his constitutional rights were violated when the superseding indictment was amended by hand in court to delete the allegation that the instant offense included "at least five kilograms of" cocaine hydrochloride. He contends that the amendment amounted to "prosecutorial misconduct," because the type and quantity of drugs are elements of a drug trafficking offense. The amendment resulted in there being no quantity of cocaine charged as an object of the conspiracy to distribute and possess with intent to distribute. Cardosa adds that a constitutionally effective attorney would have objected to the amendment because an indictment only may be amended by a grand jury.

The facts underlying this claim were known to Cardosa prior to the time he entered his plea of guilty, therefore precluding him from raising it on collateral review. Furthermore, Cardosa failed to raise prosecutorial misconduct as a ground for appeal before the Fourth Circuit Court of Appeals, resulting in the procedural default of that claim. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Finally, Cardosa, through counsel, *joined* in the manual amendment of the superseding indictment by counsel's initialing the deletion. Cardosa

9

therefore, cannot shift the blame to his counsel for defense complicity in amending the superseding indictment, because he cannot meet the second prong of the Sixth Amendment *Strickland* test -- the amendment was, if anything, favorable to Cardosa.

As demonstrated in the table, above, the amendment to the superseding indictment *reduced by half* Cardosa's statutory exposure based on cocaine quantity, but otherwise had no effect. Cardosa has not alleged any facts to support a prosecutorial misconduct claim in this instance that he did not know or have reason to know at the time he entered his guilty plea. Even assuming a technical violation of the general rule that an indictment may not be "amended" without returning to a grand jury, *see Russell v. United States*, 369 U.S. 749, 770 (1962), the Government's action in pursuing the amendment favored, rather than prejudiced, Cardosa. He still was free to put the Government to its proof, but elected not to do so. The court has examined the remainder of Cardosa's allegations and concludes that none states a claim upon which relief may be granted under § 2255.

In his 137-page Response (including attachments) in opposition to the Government's Motion to Dismiss, Cardosa methodically and meticulously seeks to disprove the Government's position by picking apart the transcript of his sentencing hearing, pointing out factual discrepancies, discussing case law, and expounding on legal theory. In general, it is his position that the witnesses upon whom much of the Government's drug quantity allegations depended, lied about the nature and extent of his involvement.

In pursuing post-conviction relief, Cardosa overlooks three glaring facts. The first fact is that he waived his right to challenge his conviction or sentence on appeal and on collateral review, including a motion pursuant to § 2255, except upon grounds of ineffective assistance of counsel or prosecutorial misconduct *not known to him at the time he entered his guilty plea. See* Memorandum of Plea Agreement [DE-54] at § 2(b). Cardosa's seven claims raised herein are only *facially* based on those grounds. In fact, the Cardosa's claims all are thinly-veiled

10

substantive attacks on his conviction. Cardosa has poured through the record and has raised every argument he can muster, carefully phrasing his claims in terms that accuse his lawyer and/or the Government of ineffective assistance or prosecutorial misconduct, respectively, so as to avoid his waiver agreements.

Second, Cardosa fails to appreciate the fact that he pled guilty and stated to the court under oath that he did, in fact, commit the acts constituting the offense alleged in Count One of the amended superseding indictment. Cardosa's knowing and voluntary guilty plea renders irrelevant the credibility of the Government's witnesses, the legality of his arrest, the admissibility of documentary evidence at trial, etc. The Government was relieved of its burden to prove Cardosa guilty of the offense, because he admitted to it. Nowhere does he contend he was forced to plead guilty, and the record amply reflects the voluntariness of his knowing plea.

Third, Cardosa obviously does not comprehend his good fortune. Because the Government did not seek to hold him responsible for drug quantities it could not prove through credible evidence, Cardosa's exposure and subsequent sentence was *about half* what it would have been had the Government not withdrawn prior to arraignment allegations it admitted it could not prove.

Moreover, this may be the only case in which this court has honored drug quantity stipulations where a preponderance of the evidence arguably supported greater amounts. **It is not this court's practice to accept drug quantity stipulations in plea agreements**. A preponderance of the evidence at sentencing was that the Government could prove Cardosa was responsible for four kilograms of cocaine and 500-600 pounds of marijuana. According to the case agent, these quantities did not require the testimony of the unreliable cooperating witnesses. For whatever reason, however, the Government chose to stipulate to an even lesser amount – an undesignated quantity of cocaine and 100 pounds of marijuana. Even if the marijuana were entirely removed from the allegations, Cardosa would have been subject to a

11

sentence of up to 20 years for the cocaine alone. His 63-month sentence fell far below that maximum penalty and was within the guideline range.

## CONCLUSION

For the foregoing reasons, the court concludes that Cardosa has failed to allege facts upon which a claim for relief for ineffective assistance of counsel or prosecutorial misconduct may be had. He also waived his right to bring an action for post-conviction relief on those grounds insofar as he was aware of supporting facts prior to the entry of his guilty plea. *See* Memorandum of Plea Agreement [DE-54], ¶ 2(b).

Cardosa received every benefit of the doubt, every opportunity to express dissatisfaction with his lawyer before entering his plea, and two opportunities to enter not guilty pleas and go to trial. He chose, instead, to accept an extraordinarily generous plea agreement,

The court's careful consideration of Cardosa's § 2255 motion and memorandum, together with the record and this court's own recollection of the prior proceedings results in the conclusion that his motion fails to state a claim for relief in this court from his conviction or sentence. The Government's Motion to Dismiss his § 2255 motion is ALLOWED.

SO ORDERED.

This the _13_ day of April, 2008.

Jame C. Fox

JAMES C. FOX
Senior United States District Judge

12